UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JAMES DUNN                                        CIVIL ACTION

VERSUS                                            NO. 16-81-SDD-EWD

JASON KENT, WARDEN

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 7, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES DUNN**                                             **CIVIL ACTION**

**VERSUS**                                                 **NO. 16-0081-SDD-EWD**

**JASON KENT, WARDEN**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the application of Petitioner James Dunn ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Therein, Petitioner asserts the following grounds for relief: (1) the jury verdict is contrary to the law and evidence; (2) the jury verdict is not supported by sufficient evidence to find the defendant guilty of forcible rape and second degree kidnapping; (3) the introduction of evidence of Petitioner's past drug use was in error; (4) the trial court erred in refusing to admit certain evidence and in refusing to allow the defendant to offer it as a proffer; (5) the trial court erred in allowing the introduction of an audiotape containing a phone call between the alleged victim and defendant; (6) ineffective assistance of counsel; and (7) cumulative error.[1] For the following reasons, the undersigned recommends Petitioner's application be denied. There is no need for oral argument or an evidentiary hearing.

## I.    Procedural History

Petitioner was charged by grand jury indictment on April 29, 2009 with aggravated rape (count one) and second degree kidnapping (count two) in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[2] A trial by jury commenced on March 5, 2012. On March 9, 2012, Petitioner was found guilty of the responsive charge of forcible rape, as

---

[1] R. Doc. 1, pp. 13-14. Petitioner's claims for relief have been renumbered by this Court for ease of reference. Petitioner asserts his counsel was ineffective for five reasons, which are all discussed in turn below.

[2] Trial Court Record, p. 23.

to count one, and guilty as charged, as to count two.[3]  Petitioner filed post-trial motions, which were denied.  On June 1, 2012, Petitioner was sentenced to twenty years hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence.[4]  The court sentenced Petitioner on count two to twenty years hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence, to run concurrently with the sentence imposed for count one.  On June 6, 2012, Petitioner filed a Motion to Reconsider Sentence and a Petition for Appeal.  On July 16, 2012, the Petition for Appeal was granted.[5]  On October 18, 2012, the Motion to Reconsider Sentence was denied by the trial court.[6]

Petitioner thereafter filed a direct appeal with the Louisiana Court of Appeal for the First Circuit ("First Circuit") raising the following assignments of error: (1) the jury verdict is contrary to the law and evidence; (2) the jury verdict is not supported by sufficient evidence to find the defendant guilty of forcible rape and second degree kidnapping; (3) the trial court committed an error of law by allowing testimony regarding defendant's prior drug usage; (4) the trial court committed an error of law when it excluded certain evidence and refused to allow the defendant to offer it as a proffer; and (5) the trial court committed an error of law when it allowed the introduction of an audiotape of a telephone call between the defendant and alleged victim.  On June 7, 2013, the First Circuit affirmed Petitioner's convictions and sentences.[7]  On July 2, 2013, Petitioner filed an application for writ of certiorari to the Louisiana Supreme Court.  The Louisiana Supreme Court denied Petitioner's writ application on February 7, 2014.[8]

---

[3] Trial Court Record, pp. 392-93 & 844-45.
[4] Trial Court Record, pp. 407 & 852-61.
[5] Trial Court Record, p. 419.
[6] Trial Court Record, p. 420A.
[7] *State v. Dunn*, 2012-1820, 2013 WL 2490567 (La.App. 1 Cir. 6/7/13)
[8] *State v. Dunn*, 2013-1633, 131 So.3d 855 (La. 2/7/14).

On March 13, 2014, Petitioner filed an application for post-conviction relief in the trial court, raising ineffective assistance of counsel as grounds for relief, specifying the following acts: (1) failing to adequately present the defense of actual innocence; (2) failing to investigate, interview, and subpoena witnesses; (3) failing to file Petitioner's pre-trial motion for severance of offenses; (4) failing to object to the admissibility of other crime evidence concerning the defendant's past; and (5) failing to object to the State's failure to lay a proper foundation for admission of evidence of other crimes and inflammatory statements.

On November 21, 2014, Petitioner's application for post-conviction relief was dismissed by the trial court, as the claims contained therein were determined to be without merit. On appeal, the First Circuit denied Petitioner's writ application regarding post-conviction relief. On January 15, 2016, the Louisiana Supreme Court also denied Petitioner's application, stating, in pertinent part: "Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[9] Thereafter, on February 17, 2016, Petitioner filed the instant application for writ of habeas corpus.[10]

## II.    Factual Background

The underlying facts, as accurately summarized by the First Circuit are as follows:

> The victim, D.G.,[11] testified she was married to the defendant between May 13, 2005 and February 2010, and they had two children together. She stated the defendant "went back out on crack" beginning in October 2007. She indicated the defendant would disappear for a week or two, and then come back to the family home. He would tell her that he was tired, "had been out there working for drugs," and needed food and a bath. The victim stated when the defendant was using drugs, he was "more to himself," angry, and depressed. Additionally, he would sell anything in the house he could carry, such as food from the freezer, alcohol, the children's

---

[9] *State ex rel. Dunn v. State*, 2015-0600, 182 S.3d 961 (La. 1/15/16).
[10] R. Doc. 1.
[11] The victim is referenced herein only by her initials. *See* La. R.S. 46:1844(W). The indictment referenced her as "D.D." At trial, however, she indicated she had remarried since the offenses and used her new married name.

toys, the microwave, the television, and the stereo. According to the victim, the defendant also sold his truck for drugs, and she had to buy it back.

In January 2008, the victim became involved in a relationship with Gregory Griggs. In February 2008, she returned home after being out with a female friend, and found the defendant on the couch with a knife. He asked her if she had brought the police with her, because he had left her a voicemail stating "for [the victim] to come home [she] had better bring the police with [her] because [the defendant] was going to kill [her] and then kill himself." Less than a week later, she moved out of the family home with the children. She testified that after the defendant began using drugs, she no longer had sexual relations with him. According to the victim, on February 22, 2008, the defendant asked her to have sex with him. She refused, and he masturbated in front of her.

The victim testified the defendant called her on March 16, 2008, the birthday of her daughter with the defendant. The defendant's birthday was on March 18, and he requested that the victim and their children go out to eat with him and spend the day in the park with him on his birthday. The victim refused because she did not want to lose a day of work, did not want the children to be absent from school, and did not want "to fund the excursion." The defendant cursed her.

According to the victim, on March 17, 2008, at approximately 6:00 a.m., upon returning to her Ford Expedition after taking the children to the nursery operated by the defendant's mother, she found the defendant in the rear of the vehicle. The victim told him, "Look, I don't have time for this this morning. I don't have time for this. I'm getting ready to go to work. I have to leave. Just get out of the truck." The defendant replied, "you think I'm playing with you? I'm not playing with you. You around here calling me a pussy ass n____r or whatever." The defendant "pulled up a gun," covered by a white towel, and stated, "Don't you see this in my hand? Do you see what I have in my hand? This is a gun. You're going to do what I say do." The victim started crying and did not know what to do. The defendant ordered her to "[b]ack out and drive." The defendant lowered his gun and held it to the victim's side while she drove. The victim slowed as she passed a police station on Scenic Highway, and the defendant put the gun to her neck, stating, "Don't get any crazy ideas. Don't slow down. Just keep going. Just keep going." He directed her to the parking lot of the Palisades Apartments, where he had worked as a maintenance man. Thereafter, he ordered the victim to "take one pants leg out." He removed the painter's

jumpsuit he was wearing. He then ordered the victim to "raise [her] butt and put [her] butt on the middle piece of the console." The victim told the defendant to stop, but he put his penis in her vagina as she cried. Thereafter, the defendant stated, "I guess you're going to tell on me now. You're going to call the police now." The victim told the defendant she would not call the police. She testified she told him she would not call the police because he still had the gun, they were parked by some dumpsters, and she "didn't know what else he was going to do." The defendant ordered the victim to drive back, and she drove him back to the area of the nursery. He exited the vehicle and asked the victim if she was going to call the police. She answered negatively, and he stated, "Well, if you don't call the police, nothing will happen to you." According to the victim, the defendant forgot his belt in her vehicle.

The defendant also testified at trial. He blamed the victim's infidelity for the failure of their marriage and for his drug use. In regard to the incident, he claimed, beginning on March 7, 2008, he had persistently tried to meet the victim to try to reconcile their marriage. He stated every time they left each other or saw each other, they would embrace. According to the defendant, the victim agreed to meet him on the day of the incident and dropped off the children early at the nursery. He stated he sat in the passenger seat of the Expedition, and the victim saw him as she entered the vehicle. He claimed she drove him to the apartments and he told her, "Well, look, I know if we make love ... we probably can, you know, get back together." According to the defendant, the victim gave him oral sex, and then he "got up on top of her." He claimed "she willing it, feeling it, was wanting to be with me." The defendant stated the victim became angry when he asked, "You still seeing that n____r." He claimed he called her a "B" and "Ho," and she started crying. He stated he became angry with the victim and told her to park his vehicle at his mother's house and to get whatever was in his name out of his name. He claimed the victim stated, "'I'll fix it where you never see them again."

The defense theory at trial was that the victim lied about the defendant kidnapping and raping her as part of a conspiracy with Gregory Griggs to "eliminate [the defendant] from the picture" so that they could get married.

### III.     Law and Discussion

#### A.  *Standard of Review*

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[12]  This standard is difficult to meet.[13]  Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[14]  Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[15]  State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[16]  Applying this standard to Petitioner's claims, there is no basis for the granting of habeas relief.

---

[12] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[13] *White v. Woodall*, 572 U.S. 415, 419 (2014).
[14] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[15] *Id.  See also, Williams v. Taylor*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").
[16] 28 U.S.C. § 2254(e)(1).

### B. *Claims 1 and 2: Sufficiency of the Evidence*

Petitioner raises two of the issues addressed in his direct appeal, both of which relate to sufficiency of the evidence: (1) the jury verdict is contrary to the law and evidence and (2) the jury verdict is not supported by sufficient evidence to find Petitioner guilty of forcible rape and second degree kidnapping.[17]   In a federal habeas corpus proceeding, the Supreme Court's decision in *Jackson v. Virginia*,[18] provides the standard for testing the sufficiency of the evidence.   The question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[19]   Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial.[20]

The First Circuit rejected the arguments Petitioner raises here regarding the sufficiency of the evidence, stating:

> After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of those reasonable hypotheses of innocence raised by the defendant at trial, all of the elements of forcible rape and second degree kidnapping and the defendant's identity as the perpetrator of those offenses against the victim. The verdicts rendered against the defendant indicates the jury rejected the defendant's claims that the victim consented to driving him to the Palisades Apartments for consensual sex. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La.1984). No such hypothesis exists in the instant case. Further, the verdicts rendered indicate the jury accepted the victim's testimony and rejected the defendant's testimony. This court will not assess the credibility of

---

[17] R. Doc. 1, p. 13.
[18] 443 U.S. 307 (1979).
[19] *Id*. at 319.
[20] *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989).

witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Lofton*, 96–1429 (La.App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, *writ denied*, 97–1124 (La.10/17/97), 701 So.2d 1331. Additionally, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. *See State v. Ordodi*, 2006–0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007–2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).[21]

State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review.[22]  Further, the First Circuit's adjudication of the merits of Petitioner's claim does not appear to be contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented.

Regarding the definition of the substantive elements of the alleged offenses, the First Circuit noted as follows:

rape "is the act of ... vaginal sexual intercourse with a ... female person committed without the person's lawful consent." La. R.S. 14:41(A). "Emission is not necessary, and any sexual penetration, when the rape involves vaginal ... intercourse, however slight, is sufficient to complete the crime." La. R.S. 14:41(B). Forcible rape is rape committed "when the ... vaginal sexual intercourse is deemed to be without the lawful consent of the victim" because it is committed under any one or more of the following circumstances: "(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim

---

[21] *State v. Dunn*, 2012-1820 (La. App. 1 Cir. 6/7/13), *writ denied*, 2013-1633 (La. 2/7/14), 131 So. 3d 855.

[22] *Dickinson v. Cain*, 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).

reasonably believes that such resistance would not prevent the rape." La. R.S. 14:42.1(A). . . second degree kidnapping is the forcible seizing and carrying of any person from one place to another wherein the victim is physically injured or sexually abused. La. R.S. 14:44 .1(A)(3) & (B)(1).[23]

Juries are afforded broad discretion in deciding what inferences to draw from the evidence presented at trial.[24] In fact, *Jackson* only requires that jurors "draw reasonable inferences from basic facts to ultimate facts."[25] In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence.[26] Credibility determinations are squarely within the province of the trier of fact. Witness credibility is an issue for the jury, not a federal habeas court. Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal habeas court generally will not grant relief.[27] The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.[28]

In this case, though numerous witnesses were called, there were only two witnesses to the alleged crime, and the determination regarding whose story to believe hinged on the credibility of the competing witnesses. The jury was within its role as the trier of fact when it credited the testimony of the victim over the testimony of Petitioner. Further the elements of the crimes were established through the victim's testimony, which is, alone, generally sufficient to support a

---

[23] *State v. Dunn*, 2012-1820, 2013 WL 2490567 at *3-4 (La. App. 1st Cir. 6/7/13).

[24] *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

[25] *Coleman*, 566 U.S. at 655 *quoting Jackson*, 443 U.S. at 319.

[26] *Knox v. Butler*, 884 F.2d at 851. *See also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Hosey v. Goff*, 12-161, 2013 WL 1500883, at *2 (S.D. Miss. March 11, 2013).

[27] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief.").

[28] *See Quezada v. Avoyelles Correctional Center*, 15-781, 2015 WL 5061230, at *15 (E.D. La. Aug. 17, 2015).

9

conviction.[29] Regarding the claim of forcible rape, the victim testified that Petitioner engaged in vaginal intercourse with her without her consent giving explicit details as to how the act was accomplished.[30] The victim further testified that she felt she had no choice but to comply with Petitioner's demands due to the circumstances because, according to her testimony, the Petitioner had a gun and threatened her.[31]  Regarding the charge of second degree kidnapping, the victim testified, in pertinent part, that Petitioner forced her at gunpoint to drive from one location to another and thereafter raped her.[32]

The evidence presented in the instant case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Petitioner guilty beyond a reasonable doubt of both forcible rape and second degree kidnapping.[33] Therefore, Petitioner cannot show that the state court's decision rejecting his claims was contrary to clearly established federal law, as determined by the Supreme Court of the United States nor was it based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner's claims challenging the sufficiency of the evidence are without merit.

---

[29] *Peters v. Whitley*, 942 F.2d 937, 941–42 (5th Cir. 1991); *see also Fetterley v. Whitley*, No. 94–30310, 1994 WL 708655, at *1 n. 6 (5th Cir. Dec.6, 1994).

[30] Trial Court Record, pp. 527-36.  Petitioner never denied that he and the victim had intercourse on March 17, 2008 nor that the victim drove to the location where the act allegedly occurred.  The entire basis for the defense was that the victim's actions were consensual.

[31] Trial Court Record, p. 529-31.

[32] Trial Court Record, pp. 527-36.

[33] Petitioner relies heavily on *State v. Touchet*, 2004-1027 (La.App. 3 Cir. 3/9/05), 897 So. 2d 900, 902, for his argument that the evidence was insufficient to warrant conviction of the crime of forcible rape in this case.  In *Touchet*, the court found that the evidence was insufficient to support a conviction for forcible rape, however, *Touchet* is distinguishable.  First, in *Touchet*, unlike here, the victim did not testify that the weapon was accessible to Petitioner during commission of the sexual act.  While the victim testified she did not know what happened to the weapon during the sexual act in this case (Trial Court Record, p. 535), the act occurred within the confined space of a vehicle.  Therefore, the weapon remained accessible.  Also, unlike in *Touchet* where the victim said the defendant never got very close to her with the weapon, here the victim testified that she could feel the weapon at her side during the car ride.  Trial Court Record, pp. 529 & 531-32.  Finally, in this case, Petitioner raised the insufficiency of the evidence in his July 2, 2013 writ application on direct appeal to the Louisiana Supreme Court, relying on *Touchet*.  That writ application was denied on February 7, 2014.  *State v. Dunn*, 2013-1633, 131 So.3d 855 (La. 2/7/14).

### C.  Claims 3 and 5: Introduction of Testimony Regarding Petitioner's Prior Drug Use and of the Audiotape

Petitioner asserts that the trial court erred in admitting testimony regarding his prior drug use, taking items from the family home, and selling vehicles and property from the family home, as well as admitting the audiotape of a conversation between the victim and Petitioner after the commission of the crime.  He alleges the prejudice of the testimony outweighed its probative value and was thus admitted in error.  In *Wilkerson v. Whitley*,[34] the Fifth Circuit opined that a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Federal habeas review is limited to errors of constitutional dimension and federal courts do not sit to review the mere admissibility of evidence under state law.[35]  Further, "[i]t is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas proceeding by a state prisoner."[36]  Specifically, that authority is limited to determining whether the evidentiary ruling was so prejudicial "'as to deny fundamental fairness to the criminal trial, thus violating the due process clause.'"[37]

The victim's testimony at issue consisted of the activities of Petitioner months immediately prior to and after their separation, including times when Petitioner appeared to be under the influence of drugs and times when Petitioner took and sold items from the family home.  Prior to allowing the introduction of evidence regarding Petitioner's prior drug use, the trial court held a 404(b) hearing.[38]  At this hearing, the victim testified at length regarding the activities of Petitioner that made her believe he was using drugs and his actions prior to their separation, including hiding

---

[34] 16 F.3d 64, 67 (5th Cir. 1998) (quotation omitted).

[35] *See Estelle*, 502 U.S. at 67-68.

[36] *Phillips v. Wainwright*, 624 F.2d 585, 588 (5th Cir. 1980).

[37] *Id.* (citations omitted).

[38] Trial Court Record, pp. 40-81.  Louisiana Code of Evidence article 404(b) governs the admissibility of other crimes, wrongs and acts.

in the marital abode, taking items from the marital abode (including furnishings and their children's toys), as well as other acts. The victim believed Petitioner was selling items for drugs.[39] The trial court determined that the evidence did not meet the requirements of 404(b) and was not relevant to the crime alleged, and the First Circuit denied the State's writ application on this issue. However, the Louisiana Supreme Court reversed finding that the evidence the State sought to introduce met the requirements of 404(b).[40]

In this matter, the Louisiana Supreme Court directed the trial court to admit the complained of testimony regarding Petitioner's actions and behavior leading up to the date of the crime. The evidence presented is an integral part of the story leading up to the crime alleged. In this case of marital rape, the complained of testimony is relevant because it demonstrates how and why the marriage between Petitioner and the victim broke down.[41] Without this testimony, the jury would have lacked the context in which to evaluate the actions of Petitioner and the claims of the victim. Accordingly, any prejudice presented by this testimony was outweighed by its probative value and and Petitioner has not met his burden of establishing that the admission of the victim's testimony on these issues rendered the trial fundamentally unfair.

---

[39] Trial Court Record, pp. 500 & 507-08.

[40] The November 12, 2010 ruling of the Louisiana Supreme Court stated as follows:

> Writ granted. The testimony of the alleged victim in the hearing held on October 13, 2009, regarding her relationship with the defendant and his actions during that relationship, satisfies the requirements of La. C.E. art. 404(B) and is admissible at his trial. *See State v. Rose*, 2006-402 (La. 2/22/07), 949 So.2d 1236, and *State v. Welch*, 615 So.2d 300 (La. 1993).

[41] It should also be noted that Petitioner did not deny that he and the victim were separated at the time of this incident, having used that term to describe their relationship to law enforcement when he was arrested (Trial Court Record, p. 827), nor did Petitioner deny his drug use during the period from October 2007 through February 2008 or that he was "in and out of the house" during this time. Trial Court Record, p. 809. The victim also testified in the context of explaining the breakdown of their marriage that she and Petitioner were no longer having sex prior to this incident. Trial Court Record, pp. 508 & 523.

With respect to use of the audiotape, the Petitioner has also not met his burden. The trial court considered a motion in limine[42] filed by defense counsel to exclude the audiotape and denied same.[43] The tape included a conversation between the victim and Petitioner the day following the incident.[44] In the tape Petitioner apologizes to the victim and says he did not have a gun. As noted by the First Circuit, this tape includes relevant evidence, and any prejudicial effect did not outweigh its probative value.[45] Further, Petitioner had the opportunity to testify and explain the recorded conversation to the jury minimizing any potential prejudice.

Even if this Court were to conclude that the admission of this testimony or tape was in error, "[t]he mere violation of evidentiary rules does not in itself invoke habeas review."[46] Evidentiary errors only implicate the Due Process Clause of the Fourteenth Amendment if the error was of such a magnitude as to deny fundamental fairness to the criminal trial.[47] "As a guideline to applying the criterion of fundamental fairness, we have said that the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is material in the sense of crucial, critical, highly significant factor."[48] In order to be entitled to relief, a *habeas* petitioner must establish that the evidentiary ruling was "so egregious that [it] fatally infected the proceedings and rendered his

---

[42] Trial Court Record, p. 340.

[43] Trial Court Record, pp. 471-73.

[44] Note, this Court does not have access to the audiotape, however, the Louisiana Court of Appeal for the First Circuit summarized the contents of the audiotape as follows:

> The telephone call begins with the defendant stating "I'm sorry D." He then asks for "momma's" phone number. The victim gives the defendant the phone number, and then interrupts him as he states, "Look. Look [victim's first name], don't you know I." She tells him he had no right. He replied, "I know I didn't." He then states, "You know I didn't have no gun." The victim replies, "Yes you did have a f_____ gun." The defendant claims he had a "torch handle."

*Dunn*, 2012-1820 at *7.

[45] *Id.*

[46] *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977) *citing Hills v. Henderson*, 529 F.2d 397 (5th Cir. 1976).

[47] *Id. See also Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011).

[48] *Id.* (internal quotation marks omitted) *citing Corpus v. Beto*, 469 F.2d 953 (5th Cir. 1972).

entire trial fundamentally unfair."[49] "[T]he Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not 'so pronounced and persistent that it permeates the entire atmosphere of the trial.' This is a high hurdle, even without AEDPA's added level of deference."[50]

A review of the trial court record shows that competing stories of the events of March 17, 2008 were presented by the victim and Petitioner. With regard to the audiotape, Petitioner had the opportunity to advocate for himself by rebutting the victim's testimony and explaining the tape.[51] While Petitioner testified that his apology on the tape was related to the fact he and the victim quarreled after they had consensual intercourse in the car,[52] the State presented to the jury that Petitioner's apology constituted an admission by Petitioner that he committed the crime alleged. Based on the verdict, it appears the jury credited the victim's account, but the introduction of the testimony and the tape did not render the trial fundamentally unfair.[53]

### D. Claim 4: Exclusion of Certain Evidence

Additionally, Petitioner asserts the trial court "excluded certain evidence and refused to allow the defendant to offer it as a proffer."[54] In Petitioner's habeas application, he fails to specify what evidence should have been admitted but was not. Assuming the evidence, which Petitioner complains of, is the police report filed by the victim regarding the incident, which he alleges

---

[49] *Bigby v. Dretke,* 402 F .3d 551, 563 (5th Cir.2005) (holding federal *habeas* review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated federal constitutional protections).

[50] *Gonzales*, 643 F.3d at 431.

[51] The victim was also cross-examined by defense counsel regarding her characterization of the apology and the fact that she did not actually say during the conversation that Petitioner raped or kidnapped her. Trial Court Record, pp. 608-10.

[52] Trial Court Record, pp. 831-32.

[53] The Court also notes that, on the tape, Petitioner denies having a gun during the incident. *See*, Trial Court Record, p. 842. As use of force was an essential element of both crimes, this information from the tape may have been beneficial to Petitioner's defense, if believed by the jury. In other words, not only prejudicial information was contained on the audiotape.

[54] R. Doc. 1, p. 7.

demonstrates inconsistencies between the victim's testimony before and during trial, the exclusion of this evidence did not rise to the level of a constitutional violation. Petitioner raised this issue on direct appeal, to which, the First Circuit, relying on state law, found that "the police report or initial investigative report was properly held inadmissible at trial."[55]

In addition to the foregoing principles regarding review of evidentiary rulings in habeas proceedings, specifically with respect to the refusal of a trial court to admit evidence presented by the defense, the following is also relevant:[56] "States have substantial latitude under the Constitution to define rules for the exclusion of evidence and to apply those rules to criminal defendants."[57] Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the evidence at issue is "a crucial, critical, or highly significant factor in the context of the entire trial."[58] However, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."[59]

Here, it does not appear that, "in the context of the entire trial," the police report would have been a highly significant factor had it been admitted. Though the police report was not admitted into evidence, Petitioner's counsel questioned the victim regarding the contents of the police report and pointed out discrepancies during cross examination.[60] At one point, regarding the alleged discrepancies, Petitioner's counsel directly asked the victim, "[s]o if that's in the police report, that's not correct either?"[61] As such, the pertinent information in the police report that the

---

[55] *State v. Dunn*, 2012-1820 at *4 *citing* La. Code Evid. art. 803(8)(b)(i) and *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, 1031.

[56] *See supra*, Part III c.

[57] *See Clark v. Arizona*, 548 U.S. 735, 789 (2006).

[58] *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); *accord Gonzales*, 643 F.3d at 430; *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

[59] *Id.* (internal quotation marks omitted) *citing Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

[60] Trial Court Record, pp. 586, 593, 622-24. Petitioner's counsel also questioned the victim regarding other "mistakes" in the police report including discrepancies between the number of children she dropped off at daycare the morning of the incident and the details regarding what kind of instructions Petitioner gave the victim.

[61] Trial Court Record, p. 624.

Petitioner alleges was inconcistent with the victim's testimony at trial was conveyed to the jury. Accordingly, this assignment of error is without merit.

### E. Claim 6: Ineffective Assistance of Counsel

In Petitioner's application for post-conviction relief and in the instant application, in addition to the above claims, Petitioner argues that his counsel was ineffective for five reasons: (1) failing to adequately present the defense of actual innocence; (2) failing to investigate, interview, and subpoena witnesses; (3) failing to file Petitioner's pre-trial motion for severance of offenses; (4) failing to object to the admissibility of other crime evidence concerning the defendant's past; and (5) failing to object to the State's failure to lay a proper foundation for admission of evidence of other crimes and inflammatory statements.[62]

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.[63]  The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.[64]

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.[65]  The reviewing court must indulge a strong presumption

---

[62] R. Doc. 1, p. 6.
[63] *Strickland v. Washington*, 466 U.S. 668, 687 (1984) *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.
[64] *Id*.
[65] *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).

that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.[66] This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.[67] Great deference is given to counsel's exercise of professional judgment.[68]

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.[69] To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.[70] Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[71] The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."[72] Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."[73] The above showing is one that the petitioner cannot make in the instant case.

First, Petitioner argues that counsel was ineffective for failing to present the defense of actual innocence. A review of the trial transcript indicates that the entire defense was one of actual

---

[66] *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).
[67] *Martin v. McCotter*, 796 F.2d at 817.
[68] *Bridge v. Lynaugh*, 838 F.2d at 773; *Martin v. McCotter*, 796 F.2d at 816.
[69] *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).
[70] *Strickland v. Washington*, 466 U.S. at 693.
[71] *Martin v. McCotter*, 796 F.2d at 816.
[72] *Id.* at 816-17.
[73] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

innocence.  Specifically, counsel argued that the sexual encounter between the victim and Petitioner was consensual and that the two had planned on meeting the morning of the incident. Moreover, Petitioner seemingly concedes his "actual innocence claim is entirely consistent with his defense at trial."[74]  Since a review of the record clearly indicates that counsel put forth the defense of actual innocence and Petitioner does not dispute this, this claim is without merit.

Petitioner's claims -- that counsel was ineffective for failing to object to the admissibility of other crimes evidence concerning Petitioner's past and for failing to object to the State's failure to lay a proper foundation for admission of other crimes evidence and "inflammatory statements," -- are likewise without merit.  The first prong of the *Strickland* standard requires, first and foremost, that the attorney's performance actually be deficient.  Counsel did argue against admission of this evidence at a pre-trial 404(b) hearing.  Additionally, as discussed above, Petitioner has failed to meet his burden of establishing that the admission of evidence regarding Petitioner's prior drug use and other bad acts was in error.  If the admission of this evidence was not in error, then counsel, per se, cannot have been deficient even if counsel had failed to object to admission of this evidence.  Petitioner also states that the testimony of an expert witness identifying the DNA "was allowed before the Jury in an effort to show bad character on the part of the defendant."  A review of the testimony provided by the forensic expert shows that the expert merely testified that both Petitioner's DNA and another contributor's DNA were present on the swabs from the victim's sex assault kit.[75]  The testimony had nothing to do with "other crimes" committed by Petitioner.  Accordingly, these claims are without merit.

Petitioner's claim regarding counsel's alleged failure to investigate, interview, and subpoena witnesses is also without merit.  Petitioner argues that a person by the name of Quesha

---

[74] R. Doc. 1, p. 26.
[75] Trial Court Record, pp. 746-59.

18

Johnese would have testified "that the defendant was a good person and how the victim made up stores [sic] against the defendant in process to harm the defendant."[76]   To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable.[77]   Further, to demonstrate the requisite prejudice for a complaint of this kind, the defendant must show not only that the testimony would have been favorable, but also that the witness would have come forth and testified at trial.[78]   Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony.[79]   A defendant must also establish a reasonable probability that the testimony of the uncalled witness would have affected the result of the trial.[80]

Petitioner provides no information regarding the availability of Petitioner's alleged witness.   Further, this witness could not have provided any testimony regarding the alleged crimes. The only testimony this witness could have provided was regarding Petitioner's character.   The defense called five other witnesses who testified, some regarding particular character traits of Petitioner.   Steve Thomas testified as to Petitioner's work ethic.[81] Joe Dunn, Petitioner's father, testified regarding Petitioner's good relationship with his children and his character as a family man.[82]   Janice Dunn, Petitioner's sister, testified that Petitioner was not a drinker.[83]   Leroy Edmonds testified as to Petitioner's well-known work ethic and that he was a family man.[84]   Mr.

---

[76] R. Doc. 1, pp. 27-28.
[77] *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).
[78] *U.S. v. Wolfson*, 56 F.3d 1385, *4 (5th Cir. 1995).
[79] *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).
[80] *Wolfson*, 56 F.3d at *4.
[81] Trial Court Record, pp. 763-70.
[82] Trial Court Record, pp. 775-82.
[83] Trial Court Record, pp. 783-89.
[84] Trial Court Record, pp. 790-92.

Edmonds stated particularly that "[Petitioner] was all about family."[85] Finally, Petitioner himself testified. Considering the witnesses and evidence put on by the defense, Petitioner has not made the required showing that there is a reasonable probability that the testimony of one more character witness would have affected the result of the trial. Accordingly, this claim is without merit.

Finally, Petitioner alleges counsel was ineffective for failing to file a pre-trial motion for severance of offenses. To merit habeas relief on a claim of misjoinder of offenses, a petitioner must prove that his trial was rendered fundamentally unfair due to the presentation of the evidence on the offenses together.[86] Furthermore, the burden of proving prejudice is a heavy one and a trial judge's decision on whether or not to grant a severance will rarely be disturbed by a reviewing court.[87]

Petitioner avers that because the counts of rape and kidnapping were tried together, he was prejudiced because the jury was able to hear evidence regarding one count that would not have been admissible at trial on the other count and vice versa. However, Petitioner has failed to point to what evidence would not have been admissible as to each separate count with which he was charged had the offenses been tried separately, and there is significant overlap between the evidence necessary to establish the charge of the forcible rape the evidence necessary to establish the charge of second degree kidnapping in this case. One required element of second degree kidnapping is that the victim was "sexually abused." The rape that took place constituted one element, which had to be proven by the State, to prove second degree kidnapping. Further, the act of kidnapping tends to prove one element of forcible rape, namely that because of the circumstances, (the forcible seizing and carrying of the victim, *i.e.*, the kidnapping), the victim

---

[85] Trial Court Record, p. 792.
[86] *Alvarez. v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979).
[87] *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986).

reasonably believed resistance would not prevent the rape.  Accordingly, Petitioner has failed to establish that his counsel had a legal basis for filing a motion to sever.

Louisiana Code of Criminal Procedure, article 493 provides that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged…are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  Here, the two offenses, second degree kidnapping and forcible rape, were significantly intertwined and sufficiently connected that severance was not appropriate.

Further, Louisiana courts have also concluded that "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime."[88]  The elements of forcible rape and second-degree kidnapping, as described above, are not complex, and discussion of these elements in one trial did not likely to result in jury confusion.  Rather, because discussion of the elements of each offense was necessary to prove the other offense, a motion to sever would have likely been meritless.  The Fifth Circuit has held that "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."[89]  As it appears that defense counsel would have had no reasonable legal basis to file a motion to sever, his conduct could not have been deficient.[90] Accordingly, this assignment of error is also without merit.

---

[88] *See State v. Lewis*, 557 So.2d 980, 984 (La. App. 4th Cir. 1990).
[89] *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) *quoting Clark v. Collins*, 19F.3d 959, 966 (5th Cir. 1994) (internal quotations and citations omitted).
[90] *See Green v. Johnson*, 160 F.3d 1029, 1037-38 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

### F. Claim 7: Cumulative Error

Finally, Petitioner argues that "[w]hen considering the totality of the errors raised in this Memorandum in Support of the Application for Post-Conviction relief, Due Process was surely offended."[91]  Federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial when the following elements are met: (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process.[92] Insofar as Petitioner asserts a "cumulative error" theory as a separate ground for relief, his argument is foreclosed by the Fifth Circuit's opinion in *Derden* and its progeny.  For the reasons set forth in the foregoing analyses, the alleged errors identified by Petitioner do not rise to the level of a violation of Petitioner's constitutional rights. Additionally, as presented, none of the errors raised as grounds for relief constituted errors.  Further, review of the record of Petitioner's trial reveals that Petitioner was not denied a fair trial.  Accordingly, Petitioner's cumulative errors grounds for relief is also without merit.

## IV.    Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[93]    Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.[94]  A certificate of appealability may issue only if a habeas petitioner

---

[91] R. Doc. 1, p. 30.
[92] *Nicholas v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995), *quoting Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992).
[93] 28 U.S.C. § 2253(c)(1)(A).
[94] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

has made a substantial showing of the denial of a constitutional right.[95]  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[96]  In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's application or the correctness of the procedural ruling.  Accordingly, it is appropriate that, if the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## V.    Recommendation

For the reasons set forth herein, it is **RECOMMENDED** that the Petitioner's application for habeas corpus relief be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if the Petitioner seeks to pursue an appeal, a certificate of appealability be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 7, 2019.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[95] 28 U.S.C. § 2253(c)(2).
[96] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).